April Term, 1879.

HEARD APRIL TERM, 1879.

CASE No. 739.

EX PARTE C. T. MITCHELL, RECEIVER, IN RE DANIEL HAND,
v. SAVANNAH AND CHARLESTON RAILROAD COMPANY
ET AL.

An order directing repairs to be made for the preservation of railroad property in the hands of a receiver appointed by the court, to be paid for with
certificates of indebtedness constituting a first lien upon such railroad,
can be made only upon motion and after a proper investigation and
hearing.

Before HUDSON, J., at Charleston, March, 1879.

The Circuit judge passed an order directing the receiver of the
Savannah and Charleston Railroad Company to purchase new
iron and cross-ties and one new locomotive, at a cost not exceeding $75,380. For such expenditure the receiver was authorized
to issue his pay certificates, to be paid, in the first place, out of
the net income of the road not already, by order of the court,
otherwise appropriated; and if not so paid, then on the sale of
the road, out of the proceeds of such sale, in priority to the
mortgages. He subsequently filed the following paper as a part
of his judgment:

On the morning of the 18th of March, A. D. 1879, C. T.
Mitchell, Esq., as receiver of the Savannah and Charleston Railroad Company, submitted to this court a report of the condition
of the road, setting forth the gross income thereof for several
years past, and stating that from this source sufficient has not
been, and manifestly will not be, realized to keep the road in
repairs and furnish the much-needed additional rolling stock
requisite to the business. The report is full, and shows the
absolute necessity of immediate repairs to the road, and the
urgent call for additional and safe rolling stock. Reference to
the report must be had for its details. In filing this report,
Messrs. Memminger, Campbell and Young, representing chiefly
the holders of the seven per cent. mortgage bonds, issued under

act of 1869, applied to the court for an order allowing the receiver to purchase the necessary additional rolling stock, and to make the necessary repairs of the road, and in payment thereof to issue his certificates, which should stand as a lien on the road in preference of all mortgage liens.

After discussion by counsel for and against the measure, the court referred it to the superintendent of the road, Mr. C. S. Gadsden, and an engineer, to report to the court what repairs of the road are urgently demanded, and what additional rolling stock is really needed to enable the road to do the business required of it. At five o'clock P. M. of the same day this report was submitted to the court. In substance the report stated that the road could be made secure and safe to the public by relaying with new rails twenty miles of the track, and with the best of the old rails repairing the balance.

That many new cross-ties are needed, and that of rolling stock there are needed two new engines and fifty new box-cars. The estimated cost of these matters of purchase and repairs he puts at $110,000.

Pursuant to notice counsel appeared to defend and resist this proposed scheme of expenditure. The resistance came from a number of attorneys, representing chiefly the holders of the six per cent. bonds, issued under act of 1856, and recently declared by the Circuit Court to be a first lien on the road. In resisting the application aforesaid, they urged that sufficient notice had not been given; that the court has no jurisdiction to allow any expenditure to create a first lien; that the necessity therefor does not exist; that the matter should at least be referred to a master of this court for examination and report; that the interest of their clients will be greatly jeopardized by the proposed creation of a first lien.

On the contrary, it was urged that the court having assumed the custody, control and management of the road, is clothed with jurisdiction to order an expenditure and outlay sufficient to preserve the property, which being a public highway imposes on the court duties of the gravest character; duties and responsibilities not alone to the creditors, but to the public. That the expenditures asked are not for the improvement of the property, but for

its preservation, a measure which will redound as much or more to the advantage of the holders of the first liens, whoever they may be, as to other creditors; that unless the road be speedily repaired serious accidents to the traveling public are imminent, and great loss of business to the road. That already the owners of connecting lines have given notice that they will sever their connection with the Savannah and Charleston railroad as a connecting link of a through route, and will form other connections unless this road be put in repairs and made safe to the public. At the conclusion of the argument I announced my judgment orally in open court, and signed an order to carry the same into effect, which was placed on file in the cause.

It has since been suggested to me that the order is open to a construction at variance with the judgment pronounced. To avoid misunderstanding, I proceed simply to announce in writing the judgment orally delivered.

I do not regard the controversy as arising on a motion of which formal and due notice is required. The receiver of the road in the discharge of his duty, laid before the court important information touching the responsible trust imposed upon him, which information, in the judgment of the court, calls for prompt and decisive action. Unfortunately, the course of litigation between the creditors of this road has become very complicated; has already produced much delay, is likely to produce much more delay, and prevents me from signing an order for the sale of the property, which would be more agreeable to my feelings, and more conducive to the welfare of all concerned. Pending this delay, this court remains the custodian and manager of the property through its constituted agent, and having assumed, must discharge the full measure of the duties and responsibilities of that management to the company, its creditors, and to the public. The court at present can make no order of sale, and hence the road must be suspended in its operations, or continued as a public highway.

No one desires or asks that it be suspended. To suffer it to be operated at great hazard to human life, and at the risk of loss to private property, without the means of responding in damages, would not only be an act of remissness and negligence in

the court, but would be criminal. The information laid before me by the intelligent receiver and superintendent, satisfies me that the exigency requires material repairs to preserve the property, and make the road a highway safe to travel and transportation, and leaves no doubt in my mind as to the duty of the court. I feel that I would betray the trusts reposed in me by the law were I to withhold action, and carelessly suffer this road, in its unsafe condition, to be held out to the public as a highway and thoroughway, without repairs. But I deem my power in this respect to be exhausted, by ordering only such purchases of rolling stock and repairs of the road, as are necessary to preserve the property in running order.

I will, therefore, only allow the receiver to make an outlay in this direction not exceeding the sum of $75,380, to be expended for the items of repairs and purchases set forth in his estimate, except the fifty box cars and one of the locomotives.

*In no event shall the face value* of the certificates to be issued for the expenditures exceed the sum aforesaid, to wit, $75,380 in the aggregate, and the most scrupulous care and fidelity is enjoined upon the said receiver in carrying out this judgment, and the order based thereon of date March 18th, 1879. No rate of interest having been fixed for the certificates, in the said order, the receiver will see that they bear a rate not exceeding seven per centum per annum. Let this judgment be filed as of even date with the order of March 18th, 1879, of which it forms a part.

The holders of a certain class of mortgages outstanding upon this railroad property, appealed, upon several grounds, including that upon which the appeal was decided. So far as the arguments of counsel bear upon the point decided, they were as follows:

*Messrs. T. M. Hanckell, W. H. Brawley* and *Bryan & Bryan,* for appellants.

We submit that said order has been made without due caution or deliberation, and, as appears by the record itself, without sufficient opportunity given to parties in interest, either to investigate the facts alleged in the reports of the receiver and the

superintendent of the road, or to examine the law applicable to the case, or opportunity given to the attorneys in the cause even to consult with their clients as to the advisability of the order, to obtain from them any information in their possession, or to receive any instructions whatsoever in the premises.

That said order was made, as appears by the record, without the usual reference to a master, in a case in which the courts have held that such an order should be made with the greatest care and circumspection, with full notice to all parties in interest, and with ample opportunity given to them to examine witnesses and accounts, to produce testimony, and submit argument upon the facts and the law.

That said order, as appears by the record, was made, after a reference for a few hours, to a referee, which reference was contrary to law, and the order made upon his report without opportunity given to the parties in interest to appear before him for the purpose of examining evidence or submitting either testimony or argument. *Meyer* v. *Johnston,* 53 *Ala.* 237, 346; *Fosdick* v. *Schall,* 9 *Otto* 235.

*Mr. C. G. Memminger,* for respondents.

The whole matter lay in the discretion of the court, and, in the effort to guide that discretion, the suggestions of counsel could not assume the technical form of a motion. The action of the court must be deemed spontaneous, and the first difficulty, therefore, which the present application to the Supreme Court presents, is whether it can be dealt with as an appeal.

The entire action is within the inner orbit of the court. The court has undertaken to manage. It has appointed its receiver; given him possession and directions. Difficulties occur in the management; he submits them to the court. There is no interference from without. It is the receiver (the agent of the court) who comes to his principal for instructions. That principal simply calls for argument for his own enlightenment, and then gives his own instructions. This is one of the absolute necessities produced by the situation, and no fault can be found with the judge for exercising his judgment. The only question which

can arise is, whether this judgment was so unwise as to call for the interference of the Supreme Court.

The objections made to the action of the court are in part formal and in part substantial.

The formal objection made to the want of notice is probably made from a want of knowledge of facts. Mr. Cutting's solicitors were not informed of the condition of the road any sooner than the solicitors of the other parties. The report of the receiver was only known to them at the same time that notice was given to the other parties, and the receiver himself stated that he expected the court would sit for one or two weeks beyond the time when he made his report, and that he was as much concerned as they were when he heard that the court was so soon to adjourn, and that he acted in good faith by hastening on the matter at the time he reported.

May 29th, 1879.  The opinion was delivered

PER CURIAM.  The order below, made on the application of C. T. Mitchell, receiver, was improperly granted. Orders of that class can only be made on motion and after a proper investigation and hearing. We are not called upon to determine the question of law raised by the appeal as to the authority of the court to make such order, and the propriety of the order itself.

Having the whole cause before us on appeal,* we are enabled to say that an early sale of the road is practicable and desirable, which, if made, would obviate any necessity for the order in question.

We are, nevertheless, disposed to submit all questions regarding the time and terms of such sale to the determination of the Circuit Court, after hearing, on due notice.

The order must be set aside and the proceedings remanded to the Circuit Court for the purposes above indicated, with liberty to grant an order of sale, notwithstanding the pendency of the appeal and without prejudice to the rights of parties to apply to the court for prudential orders in conformity herewith, in order to maintain the efficiency of the service and the traffic of the road until sale and delivery.

* See *post* case No. 761.